UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**Jane Doe**
     Plaintiff

    v.

**Adrian Looney**
     Defendant

No. 26-cv-10153-FDS

### DEFENDANT'S MEMORANDUM IN SUPPORT OF
### MOTION TO BAR PSEUDONYMITY

Defendant Looney submits this Memorandum in support of his Motion to Bar Pseudonymity.[1] The Plaintiff should be required to litigate this matter under her true name for the following reasons:

1.     The Court must decide this Motion pursuant to federal law and is not bound by the state court's order.

2.     "Pseudonymity will never be justified when the public disclosure that the party seeks to forestall is already a fact." *Doe v. Massachusetts Inst. of Tech*., 46 F.4th 61, 72 n.3 (1st Cir. 2022). The Plaintiff filed a Complaint Verification in Superior Court with her true name. It is publicly available in the docket of the Superior Court and this court.

3.     The four paradigms of exceptional cases detailed in *M.I.T.,* 46 F.4th at 71-72, and the totality of circumstances, do not justify the use of a pseudonym.

4.     The Court should not enable the Plaintiff's true interest in anonymity: to avoid disclosure of her history as a "Sugar Baby," seeking, "a Luxury Lifestyle," to be provided by "an older man experienced in facilitating SB/SD [Sugar Baby/Sugar Daddy] relationships." Plaintiff's "Seeking" Profile, Attachment 1.

---

[1] All statements of fact in this Memorandum are stated in the Complaint, the Answer or the attachments.

<u>Argument</u>

**I.    This Court is not bound by the state court order and must apply federal procedural law related to pseudonymity.**

"Once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 437 (1974); *Doe. v. Word of Life Fellowship*, No. 11-40077-TSH, 2011 WL 2968912, at *1 (D. Mass. July 18, 2011) (Plaintiff authorized to proceed with pseudonym in Worcester Superior Court prior to removal and subsequent prohibition pursuant to federal law); *Parson v. Farley*, 352 F. Supp. 3d 1141, 1144 (N.D. Okla. 2018) (overturning state sealing order after removal to federal court).

In *Parson*, the court observed that after removal, it is the federal court, rather than the state court, that "has the strongest interest in determining whether its own judicial records will remain sealed or will be accessible to the public." *Id.* at 1152. The same is true of the use of a pseudonym.

**II.    The Plaintiff's identity already was disclosed by the filing of a Complaint Verification with her true name.**

"[P]seudonymity will never be justified when the public disclosure that the party seeks to forestall is already a fact." *M.I.T.*, 46 F.4th 61, 72 n.3 (1st Cir. 2022); *accord Doe v. Trustees of Boston Univ.*, No. 24-10619-FDS, 2024 WL 4700161, at *6 (D. Mass. Nov. 6, 2024); *Doe v. Word of Life Fellowship, Inc.*, No. 11-40077-TSH, 2011 WL 2968912 (D. Mass. July 18, 2011); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) ("plaintiff's true identity  was  revealed  in administrative  proceedings,  [so]  the

request for anonymity is effectively moot."); *Doe v. Morgan Stanley & Co., LLC*, No. 24-cv-10391-JEK, 2024 WL 3677615, at *9 (D. Mass. Aug. 6, 2024).

In *Morgan Stanley*, *supra*, the defendant filed a motion to compel arbitration and for dismissal. The plaintiff filed an opposition with an "Affidavit of Jane Doe." The plaintiff electronically signed the affidavit with her true name. A copy of the affidavit is provided at Attachment 2. She did not seek to seal the affidavit prior to filing. Pseudonymity was denied based on the plaintiff's disclosure of her identity through the electronic signature. *Id.* The circumstances before this Court are nearly identical.

Plaintiff's Complaint was filed in Suffolk Superior Court with a Verification in which the Plaintiff signed her true name above the "Jane Doe" designation. A copy of the Verification is provided at Attachment 3. Counsel thinks it is an electronic signature with a script font, but it might be handwritten. Either way, the signature is not difficult to read. As evidenced by the Superior Court docket filed with this Court, the Plaintiff did not seek to have the Verification sealed prior to filing. [ECF No. 7].

The Plaintiff's signature, identifying her by name, is available to the public in the Superior Court filings. It is available in this case due to the requirement of including state court filings in the docket of cases removed to federal court. [ECF No. 7].

### III. The criterion and process detailed in *Doe v. M.I.T.* do not support pseudonymity.

Pseudonymity should be rejected based upon the Complaint Verification signature. However, should the Court wish to address the further merits, pseudonymity is improper regardless of the prior disclosure of the Plaintiff's identity.

In this Circuit, there is a "strong presumption against the use of pseudonyms in

civil litigation." *M.I.T.*, 46 F.4th at 67 (quoting *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022). Their use is warranted only in "exceptional cases." *M.I.T.* at 71; *see also Doe v. Rentgrow, Inc.*, No. 23-10572-NMG, 2023 WL 4354000, at *2 (D. Mass. 2023) (denying Plaintiff's Motion to Proceed Under a Pseudonym because disclosure of an expunged criminal record does not warrant anonymity). "Circumstances such as economic harm or mere embarrassment will not suffice to overcome the public's interest in disclosure." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 452 (D. Mass. 2011); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995). "And it is '[t]he party seeking pseudonymity [that] bears the burden of rebutting the strong presumption against it.'" *Trustees of Boston University* at *3 (quoting *M.I.T.* at 73).

The First Circuit has delineated four paradigms of these "exceptional cases," including "when (1) there is a risk of 'unusually severe harm'; (2) identifying the plaintiffs would harm 'non-parties'; (3) it is 'necessary to forestall a chilling effect on future litigants who may be similarly situated'; or (4) the lawsuit is 'bound up with a prior proceeding made confidential by law.'" *Trustees of Boston University* at *4, *citing M.I.T.* at 71.

While the Court's analysis should focus on these paradigms, the Court also should "balance 'the interests asserted by the movant in favor of privacy against the public interest in transparency' in light of the totality of the circumstances." *Id.*, *citing M.I.T.* at 72.

Two of the four paradigms may immediately be dismissed. There is no cognizable harm to a non-party that would stem from the use of the Plaintiff's name. And there is no prior proceeding in which anonymity was required as a matter of law. Accordingly, the Court's focus should be on the issues of severe harm and a chilling effect.

In support of the Plaintiff's Motion for Leave to Proceed Using a Pseudonym filed in

state court, her attorney submitted a supporting affidavit. It is provided as Attachment 4. The affidavit posits two reasons for anonymity. A claim is made that if the Plaintiff's name is associated with sexual assault allegations, it would cause emotional distress and related trauma and fears. An additional claim is made that emotional distress and stigma could result from misuse of a nude photograph of the Plaintiff.

The photograph depicts the Plaintiff sleeping on top of bed linens. The Defendant admits taking the photo and sharing it with the Plaintiff. To the extent that the Plaintiff might suffer any distress relating to the photo, the solution is simple enough – if it is submitted to the Court in connection with some pre-trial motion, it can be submitted under seal. If there is a trial, and the Plaintiff has a claim involving the photo that survives, the Court can address privacy concerns at that time. Consequently, the Court's assessment of "severe harm" should focus solely on whether such harm would be caused by the Complaint's allegations being associated with the Plaintiff by name.

This analysis does not occur in a vacuum. A plaintiff is not entitled to anonymity merely because they allege a sexual assault. If that were the case, a plaintiff could simply throw in a baseless allegation of sexual assault, (which is precisely what the Defendant maintains in this case), to a lawsuit involving any other claim, and achieve anonymity. To the contrary, the Court must consider the "totality of circumstances" surrounding the allegations, weigh the credibility of a claim of severe harm, and assess whether the true motive of the Plaintiff in seeking anonymity involves concerns other than harm caused by association with the allegations. *See Trustees of Boston Univ.* at *4 ("Thus, the court must balance 'the interests asserted by the movant in favor of privacy against the public interest in transparency' in light of the totality of the circumstances.") (*citing M.I.T. at* 72).

5

The parties met through a website, "Seeking." Seeking is not a traditional "dating site." It is well known for facilitating "sugar dating," where older men support younger women with financial support. The Plaintiff's listing, with the username, "jasrosexx, 22," stated: "I am looking for someone who is patient and nurturing. An older man experienced in facilitating SB/SD ["Sugar Baby/Sugar Daddy"] relationships would be ideal. I am also open to short term relationships initially, meeting a few times a month or depending on how our schedules align." The Plaintiff was seeking a "Luxury Lifestyle," "Vacations," and "No Strings Attached." Plaintiff's "Seeking" Profile; Attachment 1.

The parties' first in-person meeting was on or about May 3, 2025, to explore the possibility of a "Sugar Baby/Sugar Daddy" relationship.

They met again on or about May 6th. The Plaintiff's allegations of mistreatment focus on four claimed occurrences, the first during this second encounter. Plaintiff alleges that while they were having sex, the Defendant asked if he could strike her in the face and she consented. Her complaint is that the Defendant hit her harder than she anticipated, leaving her "shocked and disturbed." Complaint, ¶ 17. But not disturbed enough to stop seeing him, as she "nonetheless found him charming." Complaint, ¶ 18. The Plaintiff denies ever striking the Plaintiff or asking to strike her.

On May 21st, the Plaintiff flew to London at the Defendant's expense, to join him after the completion of a business trip. The other three allegations of mistreatment concern events that supposedly happened in London.

The Plaintiff alleges that as she and the Defendant slept naked next to one another, she woke to find him lying on top of her, and "pieced together" that he had ejaculated on her before he passed out. She promptly "went back to sleep" next to the Defendant.

6

Complaint, ¶¶ 25-26. The Defendant denies the event the Plaintiff "pieced together."

The Plaintiff alleges that the Defendant persuaded her to go to a strip club and demanded that she receive a lap dance. ¶ 27. The Defendant maintains that the strip club and the lap dance were the Plaintiff's idea.

Lastly, the Plaintiff alleges that the Defendant took a photograph of her sleeping naked on top of bedding, without her consent. The Defendant admits taking the photograph and sharing it with the Plaintiff.

There is compelling evidence undermining the Plaintiff's credibility, both as to whether these allegations are true and whether she suffered any harm even assuming their truth: her own texts to the Defendant.

On May 25th, just prior to her flight home from London, the Plaintiff texted the Defendant: "miss you already 🥰 thank you so much for a wonderful trip, I had such a great time with you 💕" and "thank you so much💗." On May 26th: "I miss you," and "I'm excited to spend more time together …," and "Thank you!! 💗," in reply to the Defendant agreeing to the Plaintiff's request to use his Uber account. On May 27th: "love seeing that you're back in boston already too :-)" and "excited to see you in person soon as well :) 💗 also, would it be possible to discuss some of the details of our arrangement?" On May 29th: "good morning! see you soon💕… haha just excited to see you😇." These texts are provided at Attachment 5. Later that day, the Plaintiff went to the Defendant's apartment to pick up a suitcase purchased by the Defendant filled with gifts from London and then joined him for dinner.  At dinner that night, their final meeting, they did discuss "some of the details" of their arrangement. The Plaintiff repeated a request for an allowance of $8,000/month. The

Defendant declined. The arrangement soon ended.

Cases that have applied *M.I.T.*'s "severe harm" exception to allow pseudonymity have relied upon allegations and affidavits establishing a likelihood of severe harm that go far beyond anything the Plaintiff has asserted. *Doe v. U.S. Secretary of State*, 707 F.Supp.3d 142 (D. N.H. 2023) (Afghani national who aided U.S. military was in hiding from Taliban and feared he and his family might be killed); *Doe v. United States*, No. 24-cv-11445-JEK, 2024 WL 4495107, at *1-*2 (D. Mass. Oct. 15, 2024) (Transgender plaintiff was severely sexually abused by a Customs officer, causing significant physiological harm, and plaintiff feared disclosure of intimate medical details, a history of sexual abuse, and exacerbation of gender dysphoria and depression); *Doe v. Del Toro*, No. 23-cv-13112-JEK, 2024 WL 816511, at *1-*2 (D. Mass. Feb. 27, 2024)) (Navy serviceman was sexually assaulted by a fellow sailor and feared that disclosure of prior sexual assault, years of mental health treatment, suicidal ideation and alcohol abuse "would inhibit his ongoing recovery and trigger serious risks, including suicidal ideation."); *Doe v. City of Springfield*, No. 25-20092-KAR, 2025 WL 1424333, at *1 (D. Mass. May 16, 2025) (Middle School student alleged sexual abuse by a teacher and bullying by other students relating to the abuse, and feared disclosure would cause psychological harm and exacerbate trauma and bullying).

The Plaintiff's allegations pale in comparison. There is no claim of prior sex abuse or medical issue. There is no claim of psychological treatment, before or after the London trip, and no damage claim for treatment costs. Unlike a case where the sexual contact was non-consensual and abusive in its entirety, here the sexual relationship was consensual, and it is only some conduct that allegedly happened during consensual sex that is alleged abusive.

8

The specifics of that abuse, on their face, do not support a claim of severe harm: sleeping naked with a sex partner and waking to find them on top of you and discovering ejaculate on your body; getting slapped harder than anticipated; being persuaded to go to a strip club and have a lap dance; and having a sex partner take a photo while sleeping naked next to him. None of these things reasonably support a claim of severe harm being caused by disclosure of the Plaintiff's name. This is evidenced by the Plaintiff's own words and conduct during and after the London trip. The disconnect between these allegations and the claim of severe harm being caused by disclosure of the Plaintiff's identity reveals the real reason the Plaintiff is seeking anonymity.

IV. **Shielding disclosure of the Plaintiff's "Sugar Baby" history is not a legitimate cause for pseudonymity.**

Plaintiff's counsel recently represented another plaintiff in a sexual assault case in this court: *Cheng v. Gu*, No. 23-cv-11157-AK. The Complaint alleged non-consensual oral and digital rape. There was no request for pseudonymity. The allegations in the instant case are trivial in comparison. The reason anonymity is sought in this case has nothing to do with the allegations. Instead, the reason lies in the Plaintiff's conduct, not the alleged conduct of the Defendant.

If the Plaintiff is identified by name, there is a risk that people looking for information about her will find the case and learn that she advertised herself as a "Sugar Baby," and received a good deal of money from the Defendant. It could be a potential employer, or a potential boyfriend.[2] But that is not the sort of "severe harm" that *M.I.T.*

---

[2] To the extent that the Plaintiff is concerned about disclosure to her family, pseudonymity will not matter. When the Plaintiff returned from London, allegedly suffering severe distress, she lived with her mother and sister. She regularly visited her father. All of them have relevant knowledge and are subject to deposition.

recognizes as a cause for pseudonymity.

"[C]ourts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests." *Doe, M.D., v. MaineGeneral Med. Ctr.*, No. 24-cv-00220-NT, 2024 WL 3967172, at *1 (D. Me. Aug. 28, 2024) (*quoting Abdel-Razeq v. Alvarez & Marsal, Inc.*, No.14 Civ. 5601(HBP), 2015 WL 7017431, at *4 (S.D.N.Y. Nov. 12, 2015) (collecting cases). There are an endless number of cases where a party's name could be associated with their criminal history and prove embarrassing or impact employment. *M.I.T.* emphasizes that the severe harm contemplated as supporting an exception to the use of a true name must be "physical or psychological." 46 F.4th at 71.

Even if the Plaintiff claimed that the fear of others learning of her "Sugar Baby" history would cause psychological harm, it's not enough.

> Lawsuits in federal court frequently invade customary notions of privacy and – in the bargain – threaten parties' reputations … Facing the court of public opinion under these conditions is sometimes stressful – but that is the nature of adversarial litigation. If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate.

*M.I.T.*, 46 F.4th at 70.

There are occasions when anonymity has been granted to shield a party from the disclosure of something in their past, but this has consistently involved compelling evidence that severe harm would be caused by revealing something subject to privacy protection, such as a problematic medical history, or something uniquely traumatic such as sexual assault. Here, the Plaintiff went looking for a "Sugar Daddy." The Court should not be involved in shielding her from the possibility of others learning of that choice.

Conclusion

For the foregoing reasons, the Defendant's Motion to Bar Pseudonymity should be allowed.

Respectfully submitted,

ADRIAN LOONEY
By his Attorney,

/s/ *Keith Halpern*
Keith Halpern, BBO # 545282
572 Washington Street, Suite 19
Wellesley, MA 02482

CERTIFICATE OF SERVICE
I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 20, 2026.

/s/ *Keith Halpern*

11