**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **26-10153-FDS** |
| ) | |
| **ADRIAN LOONEY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**SAYLOR, J.**

This is a civil action alleging physical and sexual assault and the nonconsensual taking of

nude photos.  Plaintiff Jane Doe (a pseudonym) alleges that defendant Adrian Looney forcefully

slapped her during sex, sexually assaulted her while she was sleeping, and took nude photos of

her without her knowledge or consent.  Jurisdiction is based upon diversity of citizenship.

Defendant has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), which

plaintiff does not oppose as to two of the five counts.  As to the remaining three, defendant has

moved for judgment in his favor based essentially on (1) 14 exhibits that are extrinsic to the

pleadings; (2) multiple inferences that are adverse to plaintiff; and (3) multiple misstatements of

the applicable law.  Indeed, the motion goes well beyond the legitimate boundaries of a Rule

12(c) motion, the purpose of which is to challenge the sufficiency of the allegations of a

complaint.  In particular, defendant makes numerous factual allegations, found nowhere in the

complaint, that disparage plaintiff and the nature of her relationship with defendant.

Some of those factual allegations may well prove to be true, and some may well be relevant.  But it is difficult to avoid the inference that the principal purpose of the motion is not to achieve the dismissal of inadequate or implausible claims, but to further one or more strategic litigation goals—such as, for example, attempting to portray plaintiff in a harshly negative light. It hardly bears mentioning that Rule 12(c) is not intended to be a vehicle for such a strategy.

In any event, and for the following reasons, the motion will be granted as to the unopposed counts and otherwise denied.

## I.      Background

### A.      The Allegations of the Complaint

Jane Doe and Adrian Looney met through an online dating site in April 2025.  (Compl. ¶ 5, Dkt. No. 7-1).  At that time, Doe was a 22-year-old college student and Looney was a 49-year-old executive at a Boston-based pharmaceutical company.  (*Id.* ¶¶ 6-7, 13).

They began messaging, first on the dating site and then off.  (*Id.* ¶¶ 8, 11).  Looney told Doe that he was "looking to spoil" her and engaged in "a pattern of flaunting his wealth, connections, and social status."  (*Id.* ¶¶ 8, 21).

Doe and Looney met in person for the first time on May 3, 2025, in Boston.  (*Id.* ¶ 12). At that meeting, he invited her to join him on an upcoming business trip to London.  (*Id.* ¶ 13). They had a second date on May 6 and had consensual sex for the first time that evening.  (*Id.* ¶¶ 15, 17).  During that encounter, Looney asked Doe if he could strike her in the face.  (*Id.* ¶ 17).  She "hesitantly agreed," but was "soon shocked and disturbed" when he used "an unreasonable amount of force that vastly exceeded what she had been expecting when she agreed to his unusual request."  (*Id.*).

Soon after, Looney left for his business trip.  (*Id.* ¶ 19).  He sent Doe updates on his travel and reiterated his invitation for her to join him in London at his expense.  (*Id.* ¶ 20).  Doe

eventually accepted and joined Looney in London on May 21, 2025.  (*Id.* ¶¶ 22-23).  While there, she stayed with him at his hotel.  (*Id.* ¶ 23).

On May 23, Doe woke up to find Looney's naked body on top of her and semen on her body.  (*Id.* ¶ 25).  She "pieced together" that "he had ejaculated on her body and then passed out after sexually assaulting her while she slept."  (*Id.*).  The next morning, Looney told Doe "I am watching you" in a "menacing tone."  (*Id.* ¶ 26).

At some point during the trip, Looney convinced Doe to go to a strip club despite her clear hesitance and demanded that she receive a lap dance from one of the dancers.  (*Id.* ¶ 27).

Also at some point during the trip, Looney took pictures of her "fully exposed" naked body while she was sleeping.  (*Id.* ¶ 30).  He did so without her knowledge or consent.  (*Id.*).

On the evening of May 24, Doe confronted Looney and stated that he would have to "honor her boundaries and treat her with respect" if they were going to continue to see each other.  (*Id.* ¶ 28).  He agreed and they reconciled.  (*Id.*).  The next day, Doe flew home to Massachusetts.  (*Id.* ¶ 29).

On May 27, Looney unintentionally shared with Doe the photos of her sleeping.  (*Id.* ¶ 31).  Doe felt violated and feared that Looney would disseminate the photos with third parties, as he had told her had done in the past with photos of other women.  (*Id.* ¶ 32).  Although she was "too uncomfortable" to confront him directly about the photos, she told him that she was not interested in taking nude photos or being photographed nude.  (*Id.* ¶ 33).  Looney said that he was "not interested in taking or possessing them anyway," which Doe "knew . . . was a lie."  (*Id.*).

According to the complaint, Doe now lives in fear that Looney will disseminate the photos and that her friends, family, or colleagues will encounter them.  (*Id.* ¶ 35).  As a result of

Looney's conduct, she experiences ongoing emotional distress that manifests in various physical symptoms.  (*Id.* ¶ 36).

### B.    Procedural Background

In December 2025, plaintiff brought suit against defendant in Massachusetts Superior Court.  (Dkt. No. 7-1).  The complaint asserts five counts:  battery (Count 1); assault (Count 2); intentional infliction of emotional distress (Count 3); violation of Massachusetts Right to Privacy Act, Mass Gen. Laws. ch. 214, § 1B (Count 4); and common-law intrusion upon seclusion (Count 5).  At the same time, she moved to proceed using a pseudonym.  (*Id.*).

Defendant removed the case to this Court on January 15, 2026.  (Dkt. No. 1).  He filed an answer two weeks later.  (Dkt. No. 6).

On February 20, 2026, defendant moved to bar plaintiff's use of a pseudonym.  (Dkt. No. 9).  The Court denied that motion without prejudice during the Rule 26 conference in April 2026.  (Dkt. No. 13).

On May 20, 2026, defendant filed a motion for judgment on the pleadings on all counts.  (Dkt. No. 17).  He attached to his motion plaintiff's online dating profile as well as messages and photos exchanged between himself and plaintiff during the course of their relationship.  (Dkt. Nos. 17-1 to 17-14).  Plaintiff opposed that motion, in part, on June 3.  (Dkt. No. 18).

## II.    Standard of Review

A motion for judgment on the pleadings under Rule 12(c) differs from a motion to dismiss under Rule 12(b)(6) primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole."  *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006).  It is, however, treated similarly.  *See id.* at 54.  To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations

must be enough to raise a right to relief above the speculative level." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). In addition to well-pleaded facts, a court may consider documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice. *Grajales v. Puerto Rico Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). A court may also consider documents central to the plaintiff's claims whose authenticity is not disputed by the parties, even when those documents are incorporated into the movant's pleadings. *Cousins v. Curran*, 509 F.3d 36, 44 (1st Cir. 2007); *see also Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). Otherwise, consideration of extrinsic documents is "forbidden" absent conversion to a motion for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

A court may only enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres*, 445 F.3d at 54.

## III.    Analysis

Plaintiff opposes defendant's motion for judgment on the pleadings as to Count 1 (battery); Count 3 (intentional infliction of emotional distress); and Count Four (violation of

Mass. Gen. Laws. ch. 214 § 1B).

Her opposition does not address defendant's arguments as to Count 2 (assault) or Count 5 (common-law intrusion upon seclusion). She has therefore waived her objections to the dismissal of these claims. *See Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*, 2023 WL 5435878, at *4 (D. Mass. Aug. 23, 2023) (collecting cases); *see Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument."). The Court will grant the motion as to Counts 2 and 5 on that ground.

As a threshold issue, the Court will not consider the exhibits that defendant included with his motion. Furthermore, and at this stage, the Court must assume the truth of all well-pleaded facts.

### A.    Battery (Count 1)

Massachusetts recognizes two forms of intentional battery: harmful battery and offensive battery. *See United States v. Faust*, 853 F.3d 39, 55 (1st Cir. 2017). Harmful battery is "any touching with such violence that bodily harm is likely to result." *Id.* (citation modified) (quoting *Commonwealth v. Eberhart*, 461 Mass. 809, 818 (2012)). For harmful battery, consent is immaterial. *Commonwealth v. Burke*, 390 Mass. 480, 482 (1983) (quoting *Commonwealth v. Farrell*, 322 Mass. 606, 620 (1948)). Offensive battery is "any unconsented touching that constitutes an 'affront to the victim's personal integrity.'" *Faust*, 853 F.3d at 55 (citation modified) (quoting *Burke*, 390 Mass. at 483).

Defendant contends that the May 6 slap cannot be a harmful battery because plaintiff did not allege bodily harm resulted. (Mot. 6, Dkt. No. 17). That is not the standard. For a harmful battery, the question is whether the defendant intended a touching for which bodily harm is *likely* to result. *See Eberhart*, 461 Mass. at 818; *Waters v. Blackshear*, 412 Mass. 589, 590 (1992). He

6

further contends that plaintiff consented to the slap.  That is also not the standard.  For a harmful battery, consent is irrelevant.  *Farrell*, 322 Mass. at 620.

Next, defendant maintains that the alleged conduct on May 23—in which he allegedly assaulted plaintiff while she was sleeping—cannot be an offensive battery because (1) it is implausible that he was on top of her given that he outweighs her by more than 100 pounds; (2) he could not have intended that touching because he at some point passed out; (3) the circumstances warrant a judicial determination of implied consent; and (4) he was unlikely to have masturbated given the nature of his relationship with plaintiff.  (Mot. 6-7).

In essence, defendant asks the court to rely on facts outside the complaint and to make a series of inferences adverse to plaintiff and favorable to him.  Again, that is not the law.  At this stage, the Court may not rely on facts outside the pleadings (with certain exceptions that are largely not relevant here) and must make all reasonable inferences in favor of plaintiff, not defendant.[1]  The complaint alleges that plaintiff "awoke to the force of Defendant's naked body on top of hers" and "pieced together" that "[d]efendant had ejaculated on her body then passed out."  (Compl. ¶ 25).  That plausibly states a claim for an offensive battery, and Count 1 will therefore not be dismissed.

## B.    Intentional Infliction of Emotional Distress (Count 3)

Under Massachusetts law, a claim for intentional infliction of emotional distress requires proof "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that

---

[1] The one document that the Court clearly has the authority to consider is the photo that defendant allegedly took of plaintiff sleeping, as it forms the basis for her claim that defendant violated the Massachusetts Right to Privacy Act, Mass. Gen. Laws. § 214, § 1B.  Its authenticity is undisputed, and it is central to the complaint. Nonetheless, for purposes of assessing the plausibility of her claims, it is not necessary to consider the specific content of the photograph.

the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth*, 417 Mass. 250, 263-64 (1994).  Recklessness is sufficient to satisfy the requirement of intent.  *Simon v. Solomon*, 385 Mass. 91, 95 (1982).

Defendant does not dispute that the allegations of the complaint are sufficient to amount to extreme and outrageous conduct or that they caused her to suffer severe distress.  Rather, he contends that the complaint fails to plausibly allege the element of intent.  As to the May 23 conduct, he asserts that the complaint does not allege any facts suggesting he intended plaintiff to suffer emotional distress, because she was sleeping during the alleged assault and thus unaware of his conduct.  (Mot. 11-12).

That is hardly a reasonable inference in plaintiff's favor.  But it is, however, a reasonable inference in her favor that defendant must have known that she would discover his conduct when she awoke, and that he intended to degrade her and cause her emotional distress.

Because the alleged May 23 conduct is sufficient to form the basis of a claim for intentional infliction of emotional distress, the Court need not consider whether other aspects of defendant's alleged conduct are sufficient to state such a claim.  *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); *see also* 5B Wright & Miller's Federal Practice & Procedure § 1358 (4th ed. 2026).  Accordingly, the motion will be denied as to Count 3.

**C.      Violation of Mass. Gen. Laws. ch. 214 § 1B (Count 4)**

The Massachusetts Right to Privacy Act establishes "a right against unreasonable, substantial or serious interference with . . . privacy."  Mass. Gen. Laws ch. 214, § 1B.  "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or

serious." *Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006).  The statute protects

individuals from "disclosure of facts . . . that are of a highly personal or intimate nature when

there exists no legitimate, countervailing interest," *Bratt v. International Bus. Machs. Corp.*, 392

Mass. 508, 518 (1984), as well as "their right to be left alone," *Polay v. McMahon*, 468 Mass.

379, 382 (2014) (quoting *Ellis v. Safety Ins. Co.,* 41 Mass. App. Ct. 630, 637 (1996)).

Defendant contends that plaintiff's claim that secretly taking photos of her naked body

constitutes a violation of her right to privacy fails on two grounds.  First, he contends that it fails

because he did not show the photos to any third party.  Again, that is not the law.  Disclosure of

private information is not a requirement under the statute.  Although "[m]ost of [Massachusetts]

jurisprudence under that statute has involved public disclosure of private facts, . . . a plaintiff also

may support a claim of invasion of privacy by showing that a defendant has intruded

unreasonably upon the plaintiff's 'solitude' or 'seclusion.'" *Polay*, 468 Mass. at 382 (collecting

cases).

Second, defendant contends that the complaint does not allege an unreasonable and

substantial or serious invasion of privacy.[2]  Generally, that issue presents a question of fact.  *See*

*id.* at 383.  "In determining whether a defendant committed an unreasonable intrusion," a court

should "balance the extent to which the defendant violated the plaintiff's privacy interests against

any legitimate purpose the defendant may have had for the intrusion." *Id.*  That balancing

enables courts to "consider[] prevailing societal values and . . . enter orders which are practical

---

[2] The motion contends that "[t]he most likely purpose behind the defendant's taking of the photo that can be inferred from the Complaint and the photo itself, is that the defendant thought that the plaintiff looked attractive and wanted to preserve the image." (Mot. 15).  That claim is directly contrary to the allegation in the complaint—which the Court must assume is true—that defendant told her he was "not interested" in taking or possessing nude photographs of her.  (Compl. ¶ 33).

and capable of reasonable enforcement." *Id.* (quoting *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 519 (1991)).

In *Polay v. McMahon*, the Supreme Judicial Court found that allegations that a neighbor conducted video surveillance of the interior of plaintiffs' home stated a claim under Massachusetts Right to Privacy Act.  The court reasoned that "[n]owhere are expectations of privacy greater than in the home."  *Id.* at 383 (quoting *Commonwealth v. Balicki*, 436 Mass. 1, 12 n. 14 (2002)).  Surely plaintiff's privacy interest in her naked body is even greater.  *See York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("We cannot conceive of a more basic subject of privacy than the naked body.").  And a person does not forfeit her fundamental expectation of privacy by participating in an intimate relationship.  *See Commonwealth v. Castro*, 99 Mass. App. Ct. 502, 507 (2021) ("A person does not forever forfeit all privacy rights, without limitation, by engaging in intimate or personal contact with another.").  That conclusion is bolstered by the fact that secretly photographing a person who is nude without knowledge or consent, when that person has a reasonable expectation of privacy in not being so photographed, is a criminal offense in Massachusetts.  Mass. Gen. Laws. ch. 272, § 105.  The motion will therefore be denied as to Count 4.

## IV.    Conclusion

For the foregoing reasons, defendant's motion for judgment on the pleadings is GRANTED as to Counts 2 and 5, and otherwise DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV

Dated:  July 20, 2026                          United States District Judge

10